# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 18, 2014 Session

## STATE OF TENNESSEE EX REL. MARK B. GARRETT v. CITY OF NORRIS, TENNESSEE

**Appeal from the Chancery Court for Anderson County**
**No. 11CH3770     William Lantrip, Chancellor**

---

**No. E2013-02355-COA-R3-CV-FILED-AUGUST 28, 2014**

---

This appeal arises from a challenge to an annexation ordinance.  The City of Norris, Tennessee ("Norris") passed two annexation ordinances on the same day.  The second territory to be annexed was contiguous to the city only through bordering the territory annexed earlier that same day.  Mark B. Garrett ("Garrett"), a property owner in the second annexed territory, sued Norris in the Chancery Court for Anderson County ("the Trial Court") in a bid to stop the annexation of this second territory ("the Territory").  The Trial Court eventually voided the annexation of the Territory on the basis that the Territory was not contiguous to the city.  Norris appeals.  We hold, *inter alia*, that the annexation ordinance purporting to annex the Territory is void because at the time of the passage of the annexation ordinance, the first annexation was not yet operative and the Territory, therefore, was not contiguous to the city as required by law.  We affirm the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

P. Edward Pratt, Knoxville, Tennessee, for the appellant, City of Norris, Tennessee.

David S. Wigler and Houston S. Havasy, Knoxville, Tennessee, and David A. Stuart, Clinton, Tennessee, for the appellee, Mark B. Garrett.

**OPINION**

**Background**

On November 17, 2011, the Norris City Council met to conduct city business. The council considered Item No. 2, Ordinance 544, on second reading. Ordinance 544 would annex 4,350 feet of Highway 61 right-of-way along the city's southern boundary, along with four parcels of private property on the other side of Highway 61 right-of-way. Ordinance 544 was adopted unanimously. The council conducted other business later that same day. Garrett spoke out against the proposed annexation of the Territory and objected to a plan of services for annexation of his property. Norris then proceeded to consider Item No. 5, Ordinance 545. Ordinance 545 would annex two parcels adjoining the territory purportedly annexed by Ordinance 544. In other words, the Territory is contiguous to the city only by virtue of its adjoining the territory annexed by Ordinance 544 earlier the same day. Garrett owned property in the Territory sought to be annexed in Ordinance 545, the subject of this lawsuit. There is no dispute that the Territory falls within the urban growth boundary of Norris. Ordinance 545 was adopted by a four to one vote.

On December 15, 2011, Garrett sued to challenge Ordinance 545 annexing the Territory. No one challenged the adoption of Ordinance 544. Garrett's complaint included the following allegations:

> 7.     Plaintiff alleges that the annexation is not reasonable and is not reasonably necessary for the welfare of the municipality.
> 8.     Plaintiff alleges, on information and belief, that the defendant did not comply with all of the provisions and conditions of Tenn. Code Ann. §§ 6-51-101, *et seq.*, which prescribes the lawful method and minimum requirements for the annexation of territory by a municipality, and plaintiff alleges that the defendant should be required to provide strict proof of compliance with each and ever [sic] provision and requirement contained therein.
> 9.     This action is authorized by Tenn. Code Ann. § 6-51-103, and is in the nature of a quo warranto proceeding brought in accordance with Tenn. Code Ann. §§ 29-35-101, *et seq.*, to contest the proposed annexation on the grounds previously set forth and on the ground that it may not be deemed reasonably necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole and so constitutes an exercise of power not conferred by law.

Garrett then sought leave to amend his complaint to include a constitutional challenge to Tenn. Code Ann. § 6-58-111. Norris opposed the amendment, but the Trial Court allowed it. Norris filed two motions to dismiss, challenging the complaint in that it lacked sufficient factual allegations, that the applicable statute of limitations had expired, and that the Trial Court lacked subject matter jurisdiction. Namely, Norris asserted that Garrett improperly filed under the older, inapplicable statute for challenging annexations, Tenn. Code Ann. § 6-51-103, rather than the new statute at Tenn. Code Ann. § 6-58-111. After a hearing, the Trial Court held that it lacked subject matter jurisdiction and dismissed Garrett's complaint. Garrett filed a motion to alter or amend, which the Trial Court granted in February 2013. The Trial Court concluded that, notwithstanding the complaint's citation to the wrong statute, Garrett's complaint was sufficient to state a cause of action and the Trial Court had subject matter jurisdiction. The Trial Court also struck the amended complaint. In May 2013, as the case was ready for trial, Garrett filed a motion for leave to file a motion challenging Ordinance 545 on the theory that it could not be annexed sequentially with the as yet inoperative Ordinance 544 in the same day. This, according to Garrett, was an unlawful annexation of territory not contiguous to the city. Agreeing with Garrett's position, the Trial Court voided Ordinance 545.

The Trial Court recognized this ruling was premature, and so allowed Garrett to file a motion for summary judgment. The Trial Court granted Garrett's motion for summary judgment, holding that Ordinance 545 purporting to annex the Territory was void because it was adopted sequentially to Ordinance 544 in the same meeting, thus violating the contiguity requirement for annexations. The Trial Court stated:

> Well, the Court finds that there is undisputed facts in this matter that is essentially stipulated, everybody agrees what happened. The Court is convinced that the - - at the time of the annexation of the property before the Court today, that it was not contiguous to the town of Norris and that the statutory requirement that the property be contiguous - - and I believe it needs to be contiguous at the time of the commencement of the annexation process, and certainly needs to be - - there needs to be a - - that the property that it is then contiguous to be annexed. And I find that doing it the same night, breaking it up just by period of time with other considerations does not cure the fact that this property was not contiguous to the town at the time of the adoption of the ordinance which is being challenged before the Court.

> And for that reason, the Court finds that the motion for summary judgment by the defendant - - by, I guess it would be by the plaintiff in this matter, should be granted.

Norris filed a motion to alter or amend, which was denied by the Trial Court. Norris appeals the Trial Court's summary judgment voiding Ordinance 545.

## Discussion

Both parties raise several issues on appeal. We restate and consolidate these into two dispositive issues: 1) whether the Trial Court had subject matter jurisdiction to hear this case; and, 2) whether the Trial Court erred in granting summary judgment voiding the annexation ordinance. Garrett also filed a motion to dismiss this appeal. In his motion, Garrett argues that the recent changes to annexation law signaling an end to annexation by ordinance require that we dismiss this appeal as moot. We will address Garrett's motion to dismiss in the course of addressing the other issues.

This case was decided on summary judgment. With regard to summary judgments, this Court explained in *Estate of Boote v. Roberts*:

> The trial court's resolution of a motion for summary judgment is a conclusion of law, which we review *de novo* on appeal, according no deference to the trial court's decision. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *see Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

> This action was filed [after July 1, 2011]. Therefore, the trial court was required to apply the summary-judgment standard set forth in Tennessee Code Annotated § 20-16-101.[1] That statute provides:

>> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

>>> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

---

[1]Section 20-16-101 is applicable to all cases filed on or after July 1, 2011.

> (2) Demonstrates to the court that the
> nonmoving party's evidence is insufficient to
> establish an essential element of the nonmoving
> party's claim.

Tenn. Code Ann. § 20-16-101 (Supp. 2012).[2]

*Estate of Boote v. Roberts*, No. M2012-00865-COA-R3-CV, 2013 WL 1304493, at \*\*8-9 (Tenn. Ct. App. March 28, 2013), *no appl. perm. appeal filed* (footnotes in original but renumbered). Here, however, the movant, Garrett, had the burden of proof at trial, and so we apply the pre-statutory standard of review. Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also*

---

[2]Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan*, which permitted a trial court to grant summary judgment only if the moving party could either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at \*5 n.3 (Tenn. Ct. App. July 5, 2012).

*Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).[3]

We first address whether the Trial Court had subject matter jurisdiction to hear this case. Norris argues, among other things, that Garrett's complaint was fatally defective because it cited to the older, inapplicable statutory scheme for challenging annexations at Tenn. Code Ann. § 6-51-103, rather than the newer statute Tenn. Code Ann. § 6-58-111, which pertains to territories in the urban growth boundary as in the instant case, and thus it failed to invoke subject matter jurisdiction. Our Supreme Court has stated:

A municipality may annex an area within its urban growth boundaries using methods established by the 1955 Act, and a property owner challenging that annexation via a *quo warranto* proceeding will bear the burden of showing that the annexation "is unreasonable for the overall well-being of the communities involved" or that "[t]he health, safety, and welfare of the citizens and property owners of the municipality and territory will not be materially retarded in the absence of such annexation." Act of May 1, 1998, § 12(a) (codified as amended at Tenn. Code Ann. § 6-58-111(a) (Supp. 2008)). Moreover, the case will be heard without a jury. Tenn. Code Ann. § 6-58-111(b). If, however, the municipality wishes to annex an area outside its growth boundaries, it must either propose an amendment to the growth plan or rely on the referendum

---

[3]We believe applying either standard of review for summary judgment would yield the same outcome in this matter.

annexation method. Act of May 1, 1998, § 12(c)-(d) (codified as amended at Tenn. Code Ann. § 6-58-111(c)(d)(2008)). Thus, the 1998 Amendments reflect a balance. While, on one hand, the new restrictions discourage annexations that extend beyond a city's predicted area of growth, on the other, the 1998 Amendments assure that a municipality will not bear the burden of proof in a *quo warranto* challenge when it does exercise its power within predicted boundaries. *See Tipton*, 205 S.W.3d at 460 (discussing "significant differences" in *quo warranto* procedures under the 1998 Amendments and the "older framework").

\*\*\*

Under the principles of our constitution, the General Assembly "could have delegated to the municipalities the authority to annex with no right of judicial review absent constitutional restraint." *Bastnagel*, 457 S.W.2d at 534. The right to challenge an annexation is thus a "statutory right" that "in its very origin is limited." *Brent v. Town of Greeneville*, 203 Tenn. 60, 309 S.W.2d 121, 123 (1957). We have stated that "[w]ithin the four corners of [the *quo warranto*] statute lies the entire jurisdiction and authority of the Courts to review the actions of municipalities in enacting annexation ordinances." *City of Oak Ridge v. Roane County*, 563 S.W.2d 895, 897 (Tenn. 1978). Thus, "the courts have no power to vacate an annexation ordinance for purely procedural defects," because no such authority has been granted by statute. *City of Watauga v. City of Johnson City*, 589 S.W.2d 901, 906 (Tenn. 1979). Rather, the general rule is that defects in an annexation ordinance must be presented in the context of a challenge to its reasonableness or necessity by way of a timely *quo warranto* challenge. *City of Oak Ridge*, 563 S.W.2d at 898; *see also City of Knoxville v. State ex rel. Graves*, 207 Tenn. 558, 341 S.W.2d 718, 721 (1960) (holding that allegation that ordinance was passed without a public hearing "should be considered in connection with the question of the reasonableness of the ordinance").

In *State ex rel. Earhart v. City of Bristol*, however, we recognized an exception (other than a constitutional challenge) to the rule and held that, in certain situations where no *quo warranto* action is statutorily available, it is permissible to challenge an ordinance's validity with a declaratory judgment action. 970 S.W.2d at 953. In *Earhart* the validity of an ordinance enacted several years earlier was challenged because the annexed area contained no "people, private property, or commercial activity." *Id.* at 954; *see State ex rel. Collier v. City of Pigeon Forge*, 599 S.W.2d 545, 547 (Tenn. 1980) ("[L]ong

and lean ... annexations, *so long as they take in people, private property, or commercial activities* and rest on some reasonable and rational basis, are not per se to be condemned." (emphasis added)). Annexations containing no people, private property, or commercial activities, by necessity, cannot be challenged in a *quo warranto* action, because only an "aggrieved *owner of property* that borders or lies within territory that is the subject of an annexation ordinance prior to the operative date thereof" may file such a challenge. Tenn. Code Ann. § 6-51-103(a)(1)(A) (emphasis added). We held, therefore, that the action for declaratory judgment was permissible, but limited our holding in two key ways. First, we permitted only challenges to ultra vires acts, that is, tests of "[t]he validity of an annexation ordinance alleged to exceed the authority delegated by the legislature." *Earhart*, 970 S.W.2d at 954. Second, we stated that it is only " *where the* quo warranto *proceeding is not available*, [that] alternative equitable remedies are not barred." *Id*. at 952 (citing 65 Am. Jur.2d Quo Warranto § 7 (1972) ("[W]here the remedy by *quo warranto* is available, it is usually held that there is no concurrent remedy in equity, unless by virtue of statutory provision.")) (emphasis added).

*Highwoods Properties, Inc. v. City of Memphis*, 297 S.W.3d 695, 707-08 (Tenn. 2009).

It appears that the quo warranto challenge pursuant to Tenn. Code Ann. § 6-58-111 was the appropriate vehicle to challenge the annexation in the instant case. Nevertheless, the issue before us is whether the Trial Court lacked subject matter jurisdiction. We find no support for Norris's proposition that failing to cite to the specific statute, Tenn. Code Ann. § 6-58-111, intrinsically means that the Trial Court lacked subject matter jurisdiction. While Garrett's complaint was not a model of clarity, it articulated sufficient facts and cited relevant law such that Norris was apprised of a challenge to the annexation of the Territory. Critically, Garrett filed his complaint within 30 days as required by Tenn. Code Ann. § 6-51-102. We, therefore, have here a timely filed quo warranto challenge to an annexation ordinance that simply lacks a specific citation to the modern statute. In our judgment, and lacking any controlling authority to the contrary, we do not believe that this was fatal to Garrett's case. We also note that this case ultimately was resolved on the issue of the contiguity of the Territory to Norris, not an issue of reasonableness. We hold that the Trial Court did, in fact, have subject matter jurisdiction to hear this case.

The annexation of the Territory has neither been operative or effective pending judicial review. This Court has stated:

When a *quo warranto* action is timely filed to challenge an annexation, the effective date of the challenged annexation ordinance is "held in abeyance"

pending the litigation. *Highwoods Properties, Inc. v. City of Memphis*, No. W2006-00732-COA-R3-CV, 2006 WL 3628102 at *7 (Tenn. Ct. App. Dec.14, 2006). Moreover, an annexation is not "effective" or "operative" until the ordinance is upheld as valid by the presiding court. *Piper v. City of Memphis,* 861 S.W.2d 832, 833-34 (Tenn. Ct. App.1992) (citing *Mayor & Aldermen of Chattanooga v. Raulston,* 117 Tenn. 569, 97 S.W. 456 (Tenn. 1906)).

*City of Knoxville v. Knox County*, No. M2006-00916-COA-R3-CV, 2008 WL 465265, at *3 (Tenn. Ct. App. Feb. 20, 2008), *Rule 11 appl. perm. appeal denied August 25, 2008.*

Having held that the Trial Court had subject matter jurisdiction to hear this case, we now address Garrett's motion to dismiss. In recent years, Tennessee law regarding annexations has changed significantly. Annexation by ordinance is in its twilight. On April 15, 2014, Tenn. Code Ann. § 6-51-102 was amended by our General Assembly to provide: "Subsection (a) of this section prohibits any annexation by ordinance that is not both operative and effective prior to May 16, 2015." 2014 Tennessee Laws Pub. Ch. 707 (S.B. 2464), § 2. Moratoriums have been enacted to prevent, with certain exemptions, forced annexations in the interim. Tennessee law provides:

(a) Notwithstanding any provision of this part or any other law to the contrary:

(1)(A) From April 15, 2013, through April 15, 2014, no municipality shall extend its corporate limits by means of annexation by ordinance upon the municipality's own initiative, pursuant to § 6-51-102, in order to annex territory being used primarily for residential or agricultural purposes; and no such ordinance to annex such territory shall become operative during such period, except as otherwise permitted pursuant to subdivision (a)(1)(B);

(B) If, prior to April 15, 2013, a municipality formally initiated an annexation ordinance restricted by subdivision (a)(1)(A); and if the municipality would suffer substantial and demonstrable financial injury if such ordinance does not become operative prior to April 15, 2014; then, upon petition by the municipality submitted prior to April 15, 2014, the county legislative body may, by a majority vote of its membership, waive the restrictions imposed on such ordinance by subdivision (a)(1)(A); and

(2)(A) From April 15, 2014 through May 15, 2015, no municipality shall extend its corporate limits by means of annexation by ordinance, pursuant to § 6-51-102, or by resolution, pursuant to §§ 6-51-104 and 6-51-105; and no annexation shall become operative during such period, unless otherwise

permitted pursuant to subdivision (a)(1)(B), (a)(2)(B), or § 6-58-118, or unless the owner or owners of the property give written consent for the annexation;

(B) If, prior to April 15, 2014, a municipality formally acted upon an annexation ordinance or resolution restricted by subdivision (a)(2)(A); and if the municipality would suffer substantial and demonstrable financial injury if such ordinance or resolution does not become operative prior to May 15, 2015; then, upon petition by the municipality submitted prior to May 15, 2015, the county legislative body may, by a majority vote of its membership, waive the restrictions imposed on such ordinance or resolution by subdivision (a)(2)(A);

. . . .

Tenn. Code Ann. § 6-51-122 (Supp. 2014).

Garrett argues that Norris's only avenue for finalizing the annexation in spite of the moratorium is to petition the Anderson County Board of Commissioners for a waiver. Norris, which from the record before us apparently has not undertaken any such step, argues in response that the recent legislative enactments have no bearing on its annexation of the Territory. Garrett contends that such a petition would be futile anyway, as the Anderson County Board of Commissioners has gone on record to express its disapproval of forced annexations.

Initially, we acknowledge that the General Assembly, through its recent enactments, has demonstrated an intent to move away from and finally end "forced" annexation by ordinance. However, the legislature also has left open a route for annexations by ordinance still "in the pipeline," so to speak. The law cited above reflects that annexations by ordinance already underway may be finalized through certain waivers. Garrett submits to us that, given that body's stance on record, it would be futile for Norris to pursue a waiver with the Anderson County Board of Commissioners. We, however, believe this is an insufficient fact to preclude the possibility that a waiver could successfully be obtained. Norris could, at least in theory, pursue a waiver under the law. This being the case, we deny Garrett's motion to dismiss.

Having determined that the Trial Court had subject matter jurisdiction to hear this case and that Norris's appeal is properly before us, the final issue we address is whether the Trial Court erred in granting summary judgment voiding Ordinance 545 which purported to annex the Territory. Garrett argues that the Territory could not have been lawfully annexed because at the time of the passage of the annexation ordinance, the Territory was not contiguous to the city.

This Court recently addressed operative dates of annexations in the case of *Silliman v. City of Memphis*, No. W2013-02858-COA-R3-CV, 2014 WL 3016659 (Tenn. Ct. App. July 2, 2014), *perm. app. pending*. We stated:

> The Tennessee Supreme Court has previously held that there is a distinction between the operative date of an ordinance and the effective date of an annexation. *See Highwoods Properties, Inc. v. City of Memphis,* 297 S.W.3d 695, 711-12 (Tenn. 2009).
>
> ***
>
> Tennessee courts have consistently construed the term "operative," when modifying the term "ordinance," in the annexation statutory scheme, as referring to either thirty days from the final passage of the ordinance, when no *quo warranto* action is filed, or thirty-one days from the date upon which an order upholding the validity of the ordinance is entered, when a timely *quo warranto* action has been filed. *See Highwoods Properties*, 297 S.W.3d 695, 711-12; *Bastnagel*, 457 S.W.2d at 535; *Cochran* 2013 WL 1122803, at *3; *Town of Huntsville,* 269 S.W.3d at 61 & n. 5; *City of Knoxville*, 2008 WL 465265, at *3.

*Silliman*, 2014 WL 3016659, at **15, 18.

The full implications of an annexation ordinance are not necessarily triggered immediately upon passage of the ordinance. There is a time period in which aggrieved parties may file suit quo warranto to challenge the annexation. Here, the proverbial ink barely had dried on Ordinance 544 when Ordinance 545 was passed annexing the Territory. With Ordinance 544 not yet operative and open to court challenge, the Territory remained an island apart from Norris.

This Court addressed attempts to annex territory not contiguous to a city in a recent opinion almost squarely on point from which we now quote liberally. We stated:

> The Plaintiffs assert first that the trial court erred in upholding the annexation of the subareas that are not contiguous with the City's existing boundary at the time of annexation. Based on the language in Tennessee Code Annotated § 6-51-102(a), the Plaintiffs contend that the City may lawfully annex only "territory adjoining its existing boundaries." T.C.A. § 6-51-102(a)(1) (2005 & 2009 Supp.). In support of their contention, the Plaintiffs

cite to *Town of Bartlett v. City of Memphis*, 482 S.W.2d 782 (Tenn. Ct. App. 1972).

In response, the City points out that all of the subareas are contiguous to one another, and that some of them adjoin the City's boundary as it existed at the time of annexation. Because all of the subareas were annexed simultaneously, the City contends that it has sufficiently complied with the contiguity requirement of Section 6-51-102. Citing *American Law Reports, American Jurisprudence*, and ten cases from other jurisdictions, the City asserts that "[i]t is widely accepted that the annexation of multiple tracts is sufficient to meet the requirements of contiguity as long as one of the tracts is adjacent to the municipality and all of the tracts are adjacent to each other."

In the case at bar, it is undisputed that the land to be annexed is within the City's urban growth boundary. Consequently, Tennessee Code Annotated § 6-58-111 governs the instant *quo warranto* challenge to the annexation. *State ex rel. Tipton v. City of Knoxville*, 205 S.W.3d 456, 461 (Tenn. Ct. App. 2006). Under Section 6-58-111(a), a municipality may annex territory within its urban growth boundary by any manner prescribed in Tennessee Code Annotated § 6-51-101 *et seq*. *See* T.C.A. § 6-58-111(a) (2005 & 2009 Supp.).

In this case, the land was annexed by ordinance, and thus the annexation is governed by Tennessee Code Annotated § 6-51-102(a)(1), which provides:

> A municipality, ... upon its own initiative when it appears that the prosperity of such municipality and territory will be materially retarded and the safety and welfare of the inhabitants and property endangered, after notice and public hearing, by ordinance, may extend its corporate limits by annexation of such territory adjoining its existing boundaries as may be deemed necessary for the welfare of the residents and property owners of the affected territory as well as the municipality as a whole; provided, that the ordinance shall not become operative until thirty (30) days after final passage thereof.

T. C. A. § 6-51-102(a)(1) (2005 & 2009 Supp.). Thus, a municipality may annex land by ordinance, provided that the land to be annexed adjoins the municipality's existing boundaries and conditions warranting annexation are fulfilled.

-12-

Here, the City decided to divide the Northwest territory into forty-nine subareas and enact forty-nine annexation ordinances simultaneously. All of the subareas are contiguous to one another; however, some of the subareas do not immediately adjoin the City's boundary as it existed at the time the ordinances were passed. The issue, then, is whether the City has the authority under Section 6-51-102(a)(1) to annex subareas that do not immediately adjoin the City's boundary.

\*\*\*

More importantly, we find that this issue is not one of first impression. In *Town of Bartlett v. City of Memphis*, 482 S.W.2d 782 (Tenn. Ct. App.1972), this Court addressed a somewhat similar situation. In that case, the defendant City of Memphis passed an ordinance in 1968 to annex an area known as "Raleigh," with an effective date in 1972. *Town of Bartlett*, 482 S.W.2d at 783. At the time the annexation ordinance was passed, Raleigh apparently adjoined the existing Memphis City limit. Meanwhile, in the interim before the effective date of the Raleigh annexation, the City of Memphis and the Town of Bartlett engaged in an apparent "race" to annex an area known as "Elmore Park." Elmore Park adjoined the Raleigh area that was the subject of the Memphis annexation ordinance, but did not adjoin the Memphis City limits as they existed at the time, because the Raleigh annexation had not yet become effective.

In April 1970, the Town of Bartlett enacted an ordinance annexing Elmore Park. *Id*. at 782. In July of the same year, Memphis amended the 1968 ordinance that had annexed Raleigh to include the annexation of Elmore Park as well. *Id*. at 783. Thereafter, Bartlett filed a lawsuit challenging Memphis's annexation of Elmore Park. The trial court entered judgment for Bartlett, and Memphis appealed.

On appeal, the appellate court reviewed the operative language of Tennessee Code Annotated § 6-309, which has since been re-numbered as Section 6-51-102(a)(1). The statute states that a municipality, by ordinance, "may extend its corporate limits by annexation of such territory [a]djoining its existing boundaries as may be deemed necessary...." *Id*. at 784. The Court in *Town of Bartlett*, based on this language, concluded that the City of Memphis lacked the authority to annex the Elmore Park area "because that territory [Elmore Park] did not at the time of the procedures being reviewed, ..., adjoin the existing boundaries of the City of Memphis." *Id*. at 784. It found further

-13-

that the attempt by Memphis to annex Elmore Park by amending the prior ordinance that had annexed Raleigh amounted to a "circumvent [ion][of] the clear legislative mandate" of contiguity. *Id.* Consequently, the appellate court in *Town of Bartlett* determined that the attempted annexation of Elmore Park by the City of Memphis was void, and upheld the trial court's ruling in favor of the Town of Bartlett. *Id.*

Similar to the City of Memphis in *Town of Bartlett*, the City in this case seeks to annex land that does not immediately adjoin its boundary as it existed at the time of the annexation. The *Town of Bartlett* decision interpreted Tennessee Code Annotated § 6-51-102(a)(1) as authorizing only the annexation by ordinance of a territory that adjoins the municipality's boundary at the time of the annexation. The City urges that the facts in the instant appeal are distinguishable from those in *Town of Bartlett* because, in this case, all of the subareas were annexed simultaneously. We cannot agree. In *Town of Bartlett*, Memphis sought to annex land that did not adjoin its existing boundary by amending the ordinance that had previously annexed adjoining land, and the court in *Town of Bartlett* rejected this as an attempt to "circumvent the clear legislative mandate" of contiguity under the statute. *Id.* We find this controlling.

If we were interpreting Section 6-51-102(a)(1) on a blank slate, we might agree with the City's proposed interpretation. We are not. For over thirty years since the Court in *Town of Bartlett* interpreted the statute, the statutory language has remained intact. "[T]he fact that the legislature has not expressed disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction," because "[t]he legislature is presumed to know the interpretation which courts make of its enactments." *Hamby v. McDaniel*, 559 S.W.2d 774, 776 (Tenn.1977) (citing *Missouri v. Ross*, 299 U.S. 72, 57 S.Ct. 60, 81 L.Ed. 46 (1936); *Stern v. Miller*, 348 So.2d 303 (Fla. 1977); *Walling v. Bown,* 9 Idaho 740, 76 P. 318 (1904); *Bottomly v. Ford*, 117 Mont. 160, 157 P.2d 108 (1945); *Hargrove v. Newsome*, 225 Tenn. 462, 470 S.W.2d 348 (1971); *Krohn v. Richardson–Merrell, Inc.,* 219 Tenn. 37, 406 S.W.2d 166 (1966); *McKinney v. Hardwick Clothes, Inc.*, 217 Tenn. 457, 398 S.W.2d 265 (1966); *Cunningham v. Cunningham*, 120 Tex. 491, 40 S.W.2d 46 (1931)); *accord Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512 (Tenn. 2005). Accordingly, we find the fact that Section 6-51-102(a)(1) has not been altered in the decades since the *Town of Bartlett* decision was rendered to be indicative of the Legislature's adoption of the interpretation made by the *Town of Bartlett* Court.

In light of the interpretation of Section 6-51-102(a)(1) in *Town of Bartlett*, we must conclude that the trial court erred in finding that the City can lawfully annex the subareas that do not immediately adjoin the City's boundary as it existed at the time the City Council passed the annexation ordinances.

*Southwest Tenn. Elec. Membership Corp. v. City of Jackson*, 359 S.W.3d 590, 600-03 (Tenn. Ct. App. 2010)(footnote omitted).

Norris argues that this case is critically distinct. Here, Ordinance 545 was adopted *after* Ordinance 544, not simultaneously with it. Thus goes the argument, the ordinance passed earlier in the same day rendered the Territory contiguous.

We find Norris's argument unavailing. This strikes us as an ingenious if rather unsubtle way to attempt to bypass the contiguity requirement. We see no relevant distinction between the simultaneously adopted annexations in *Southwest Tenn. Elec. Membership Corp. v. City of Jackson* and the annexations sequentially adopted the same day in this case. Our review of annexation cases convinces us that mere passage of an annexation ordinance is not the end of the annexation process but in some instances only the beginning. Until Ordinance 544 became operative, the Territory's contiguity to Norris was only potential. It is no good to say that since Ordinance 544 never was challenged, the Territory since has become contiguous to Norris. At the time Ordinance 545 was passed, the Territory was not contiguous to Norris. Therefore, we are constrained to conclude that the Trial Court was correct in granting summary judgment voiding Ordinance 545. We affirm the judgment of the Trial Court.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, City of Norris, Tennessee, and its surety, if any.

_____
D. MICHAEL SWINEY, JUDGE